## PERROW v. SCOTT.
### In re SCOTT.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1921.)

No. 1880.

**Bankruptcy ☞172—Validity of bankrupt's deed of trust cannot be attacked by parties who were not creditors at time of its execution.**

The validity of a deed of trust executed by the bankrupt prior to bankruptcy proceedings cannot be attacked on the ground that the security was fraudulent, by creditors or by the trustee in bankruptcy on behalf of creditors who were not such at the time of its execution.

Appeal from the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Petition by R. L. Perrow, trustee in bankruptcy of the estate of J. R. Scott, bankrupt, to expunge and reject the claim of C. C. Scott, which had been allowed. Order of referee, annulling the deed of

trust, setting aside sales to C. C. Scott, and expunging his claim, was reversed by the court on petition for review, and the trustee appeals. Affirmed.

James H. Guthrie, of South Boston, Va., for appellant.

John G. Haythe, of Lynchburg, Va., for appellee.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

KNAPP, Circuit Judge. On April 26, 1916, J. R. Scott, of Brookneal, Va., was adjudicated bankrupt on his own petition. Nearly two years before, in May, 1914, the bankrupt and his wife had conveyed his entire real estate to Duncan Drysdale, trustee, to secure 11 notes, of $1,000 each, made and indorsed by him, and payable on demand at the First National Bank of Lynchburg. This deed of trust was duly recorded in the proper clerk's office soon after its execution, and the notes delivered to the bankrupt's brother, C. C. Scott, who held the same when the bankruptcy occurred. On the appointment of appellant as trustee in bankruptcy, and at various dates in May and September, J. R. Scott, C. C. Scott, and other witnesses, were examined at length in regard to the bankrupt's affairs, and particularly in regard to the consideration for these notes, no part of which had then been paid. Not long afterwards the proof of claim of C. C. Scott for the amount of the notes and interest, as a debt secured by the deed of trust, was filed without objection and allowed by the referee.

In October, 1916, the trustee petitioned for leave to sell the real and personal property of the bankrupt, "free and discharged of all liens and incumbrances thereon," describing in his petition the several parcels of real estate, and reciting that the same were encumbered by the deed of trust in question. C. C. Scott objected to such a sale on the ground that it would not extinguish the inchoate right of dower of the bankrupt's wife, and asked instead that a sale be made under the deed of trust in which the wife had joined. By order of November 20 the referee overruled the objection and directed a sale as prayed for by the trustee; the order providing, among other things, that—

"If the said C. C. Scott should become the purchaser of any of said property, the said trustee shall not collect the purchase money of him, to the extent of $12,607.83, with interest thereon from the 31st day of October, 1916, that being the amount of the debt secured to him by the deed of trust aforesaid on said property, but said trustee shall report such sale to the referee."

Upon Scott's petition for a review of this ruling it was affirmed by the court below on the 6th of December; the order of affirmance containing the same provision in substance as the one just quoted from the order of the referee.

On the following day the greater portion of the real estate was sold to C. C. Scott, the highest bidder, for the aggregate sum of $12,075, as appears by the trustee's report filed on the 12th of December. There was a further sale of some small parcels on the 24th of February, 1917, to C. C. Scott for $261, which was reported by the trustee on the 3d of March. By petition filed with the referee on the 10th of

April, the trustee asked the confirmation of these sales and for authority to convey to the purchaser. At a date not shown by the record, but presumably about this time, certain general creditors objected to a confirmation of the sale of the "new brick warehouse" for $9,250, and asked that a resale of the same be ordered, on the ground that the price was "grossly inadequate"; the claim being made that this property was "worth from $12,000 to $13,000."

Thus the matter stood for upwards of a year, until March 30, 1918, when there was a further examination of C. C. Scott and other witnesses by counsel for the general creditors. This examination was continued on the 16th of July. Then, on August 19, 1918, the trustee, "at the instance of counsel," filed a petition to reject and expunge the claim of C. C. Scott, which had been allowed in November, 1916, on the ground (1) that he and the bankrupt "were partners in the warehouse business at Brookneal, Va., under the style and firm of J. R. Scott"; and (2) that "said alleged debt is fraudulent and void as to the general creditors of said bankrupt, whose debts have been proved in this matter." This petition appears to have been based on the previous examination, as the record does not show that any testimony was afterwards taken. The demurrer, motion to dismiss, and answer of C. C. Scott was filed on the 23d of August.

Two years later, on August 27, 1920, the referee entered an order annulling the deed of trust, setting aside the sales to C. C. Scott, and expunging his claim for the $11,000 and interest, holding the same to be "fraudulent and void as to the debts of the bona fide creditors of said bankrupt." On petition for review, and by decree of October 30, the court below held the deed of trust valid, reversed the order of the referee, and confirmed the sales to Scott. The trustee appeals.

A brief statement will suffice for our conclusions. As above recited, the consideration of the notes in question was the subject of extended inquiry shortly after the bankruptcy, with the result that all parties in interest, the trustee, the other creditors, and the referee, were apparently satisfied that C. C. Scott had in fact advanced to and paid for his brother the full amount of $11,000 at or about the time the deed of trust was executed. Following this inquiry his proof of debt was filed and allowed without objection.

It is enough to say, without reviewing the testimony, that the subsequent examination in 1918 disclosed no substantial ground for rejecting a claim which had been accepted as valid more than a year and a half before, or for setting aside the sales of real estate which the trustee had deliberately asked to have confirmed not long after they were made. The original proofs showed convincingly, as we think, and as the trustee seems to have thought at the time, that C. C. Scott had actually paid to or for the bankrupt the aggregate sum of at least $11,000 on the security of the deed of trust, and those proofs, in our opinion, were not weakened or discredited by anything brought out in the later testimony, most of which had no relevancy to the issue of consideration for the notes. Moreover, and this of itself would appear sufficient, the trustee's petition does not allege, and no attempt was made to show, that any of the parties in whose behalf

this belated attack is made were creditors of the bankrupt at the time the deed of trust was executed and recorded. It is not for them to say that the security is fraudulent.

The decree appealed from will be affirmed.